# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-CR-2019 CJW-MAR |
| Plaintiff, | |
| vs. | **ORDER** |
| BRUCE TERRELL SANFORD, | |
| Defendant. | |

This matter is before the Court on defendant's Objections (Doc. 98) to the Report and Recommendation (Doc. 84) of the Honorable Mark A. Roberts, United States Magistrate Judge. On November 2, 2022, defendant filed a Motion to Suppress. (Doc. 77). The government timely filed a resistance. (Doc. 78). Defendant timely replied. (Doc. 79). For the following reasons, the Court **overrules** defendant's Objections, **adopts** Judge Roberts' Report and Recommendation, and **denies** the Motion to Suppress.

## I.    STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CRIM. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) ("[A district judge must] undertake[ ] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CRIM. P. 59(b)(3) ("The district

judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report and recommendation when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the Court reviews the disputed portions of the Report and Recommendation de novo.

## II. FACTUAL BACKGROUND[1]

On September 5, 2021, Waterloo Police Department ("WPD") Officer Amira Ehlers received a text from the owner of Flirt's Gentlemen's Club ("Flirt's") alerting her that there were two men smoking and drinking in a vehicle in front of the club. (Doc. 47, at 2; Def. Ex. F). Officer Ehlers responded to the text by asking for a description of the car but began to drive to Flirt's before receiving a response. (Doc. 47, at 2, 7; Def. Ex. F). She did not see the owner's response until sometime after she spoke with him. (Doc. 47, at 2).

Officer Ehlers parked in the lane of traffic near Flirt's entrance. (Doc. 47, at 2-3). On the passenger side of her squad car and to its front, a blue sport utility vehicle ("SUV") was parked at the curb near Flirt's entrance where the owner was standing. (Gov. Ex. 3). Officer Ehlers activated her squad car's amber warning lights, got out of her car, and spoke with Flirt's owner to find out which vehicle he was concerned about. (Doc. 47, at 3; Gov. Ex. 1 Ehlers' BWC at 1:08:11). He pointed out a blue Kia sedan ("the Kia"). (Doc. 47, at 3).

---

[1] After reviewing the Hearing Transcript (Doc. 47), the Court finds that Judge Roberts accurately and thoroughly set forth the relevant facts in the Report and Recommendation. The Court thus adopts Judge Roberts' summary of the facts here. When relevant, the Court relies on and discusses additional facts in conjunction with its legal analysis. The Court has also adopted Judge Roberts' recommendation (Doc. 84, at 2) that the Court identify defendant as the driver of the Kia.

Meanwhile, WPD Sergeant Spencer Gann responded to Officer Ehlers' call for assistance and began to drive to Flirt's. (Gov. Ex. 2 Gann's BWC at 1:07:23–1:07:30). Upon arriving at Flirt's, Sergeant Gann pulled up and parked in the lane of traffic behind Officer Ehlers' squad car. (*Id.* at 1:08:15-1:08:19). Along the passenger side of Sergeant Gann's squad car, the Kia was parked at the curb. (Gov. Ex. 3). Sergeant Gann got out of his squad car and asked Officer Ehlers which vehicle they were approaching. (Doc. 47, at 9; Gov. Ex. 1 Ehlers' BWC at 1:08:18). She informed him it was the Kia he was parked next to. He replied, "This one here? Oh." (Gov. Ex. 2 Gann BWC at 1:08:21–1:08:24).

In front of the Kia was an empty parking space along the curb, large enough to accommodate another vehicle. (Gov. Ex. 3). In front of that empty space was the blue SUV. (*Id.*). Officer Ehlers' squad car was parked in the street adjacent to this space. (*Id.*). In other words, directly to the side of Officer Ehlers' squad car was an empty parking space. To the right rear side of her car was the Kia. Officer Ehlers' squad car was parked in relation to the blue SUV such that the Kia could not have pulled forward and out into the street. The space behind the Kia was the open entrance of a driveway to a parking lot. (Gov. Exs. 1 Ehlers' BWC at 1:08:47-1:08:51; 2 Gann's BWC at 1:08:25-1:08:35; 4; 5). Thus, the area immediately behind the Kia was open to the street and the driveway. (Gov. Ex. 5). In other words, there were no cars parked immediately behind the Kia. The parking lot entrance was immediately behind the Kia. In short, the cars were parked in such a manner that the Kia could have backed up and then proceeded forward into the street and past the parked squad cars, or could have backed into the driveway of the parking lot and turned to drive in the opposite direction from the squad cars.

Defendant was in the driver's seat of the Kia and Houston Simmons, III ("Simmons") was seated in the front passenger seat. (Gov. Ex. 1 Ehlers' BWC at

3

1:08:11). Officer Ehlers approached defendant on the driver's side and explained to him there had been a complaint and informed him she smelled marijuana coming from his car. (Gov. Ex. 1 Ehlers' BWC at 1:08:34–1:09:02). She explained to defendant that "your entire car smells like there's pounds of weed in it." (*Id.* at 1:09:38-1:09:42.) She ordered defendant out of the car and searched him. (*Id.* at 1:09:52-1:11:00). She then searched the vehicle. (*Id.* at 1:11:45–1:13:48). At the same time, Sergeant Gann went around the back of his squad car and the back of the Kia to stand at its passenger door. (Gov. Ex. 2 Gann's BWC at 1:08:25–1:08:35). Once Officer Ehlers decided to do a search, Sergeant Gann ordered Simmons out of the vehicle and searched him. (*Id.* at 1:11:06–1:11:35). He observed defendant and Simmons while Officer Ehlers searched the vehicle. (*Id.* at 1:11:48–1:13:59). The search uncovered marijuana, U.S. currency, a Taurus G2C 9mm semi-automatic handgun, a burnt marijuana roach, a vacuum sealer, a vacuum sealer bag containing marijuana, documents regarding Simmons, Simmons' three cell phones, and money on Simmons' person. (Docs. 47, at 5; 35-2 at 1–2).

### III. PROCEDURAL BACKGROUND

On April 7, 2022, the government charged Simmons in a criminal complaint with possession of a firearm as a felon. (Doc. 2). On April 19, 2022, a grand jury charged Simmons with that offense by way of an indictment. (Doc. 17). On May 18, 2022, the grand jury returned a superseding indictment adding defendant and charging him also with being a felon in possession of a firearm. (Doc. 30).

On May 20, 2022, Simmons filed a motion to suppress evidence. (Doc. 35). The government filed a timely resistance. (Doc. 38). On June 10, 2022, Judge Roberts held a hearing on the motion to suppress filed by Simmons. (Doc. 43). On June 27, 2022, Judge Roberts issued his Report and Recommendation ("R&R") on that motion, which recommended that the Court deny the Motion to Suppress. (Doc. 45). On July 11, 2022,

4

Simmons timely filed his Objections. (Doc. 46). On August 15, 2022, the Court adopted Judge Roberts' R&R, denying Simmons' motion to suppress. (Doc. 48).

On November 2, 2022, defendant filed his motion to suppress evidence. (Doc. 77). In that motion, defendant raised the identical arguments raised by Simmons in his motion. (*Id.*, at 2-3). Defendant did not request a separate evidentiary hearing and did not further develop his arguments for suppression.

## IV. ANALYSIS

In Simmons' Motion to Suppress, which defendant adopts as his own, Simmons argued that the officers seized the Kia and Simmons, who was a passenger in the Kia, "when officers used their marked squad cars to block in the Kia . . . before officers had reasonable suspicion or probable cause to seize" defendant or the Kia. (Doc. 35, at 1; *see also* Doc. 35-2 (inventory)). Here, defendant is making an identical argument, asserting that he also was seized as the driver of the car in the same manner for the same reasons. (Doc. 77, at 2-3).

Judge Roberts found the officers did not block in the Kia with their cars and neither the defendants nor the Kia were seized by the way the officers parked their cars. (Doc. 45, at 7-10). Judge Roberts also found the officers did not park their cars with the intent to seize the Kia because neither Officer Ehlers nor Sergeant Gann knew which vehicle outside Flirt's was the one at issue. (*Id.*, at 10–13). Finally, Judge Roberts found a reasonable person in the position of either defendant would have felt they were free to leave. (*Id.*, at 13–15).

Defendant objects to three conclusions in Judge Roberts' Report and Recommendation: (1) that the Kia was not blocked in after Sergeant Gann parked his squad car; (2) that the Kia and defendant were not seized when Officer Ehlers and Sergeant Gann parked their squad cars near the Kia; and (3) that a reasonable person in the position of either defendant would have felt free to leave. (Doc. 98).

5

For the reasons stated in this Court's order adopting Judge Roberts' R&R as to Simmons' motion to suppress (Doc. 48), the Court adopts Judge Roberts' R&R as to defendant's motion to suppress and denies defendant's motion.

Accordingly, defendant's objection is **overruled**.

## V. CONCLUSION

For the reasons set forth above, defendant's Objections (Doc. 98) are **overruled**, Judge Roberts' Report and Recommendation (Doc. 84) is **adopted**, and defendant's Motion to Suppress (Doc. 77) is **denied**.

**IT IS SO ORDERED** this 8th day of December, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa